The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for the modification of one Conclusion of Law.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. Defendant-employer accepted liability for plaintiff's occupational disease. A Form 21 was approved by the Industrial Commission on July 21, 1992.
2. Plaintiff's average weekly wage was $321.48.
3. Medical and other treatment records, attached as "Stipulated Exhibit 1" to the Pre-Trial Agreement in this case, of Dr. John J. Wassel, Dr. Earl Correll, Dr. Stephen Naso, Dr. David Baker, Dr. Robert D. Mitchell, Cabarrus Memorial Hospital, The Rehability, and Presbyterian Orthopedic Hospital are admissible into evidence.
4. Defendant-employer offered plaintiff-employee two permanent positions: an auto cut operator position and a cleaner or sweeping position. The job descriptions of those two positions were attached to the Pre-Trial Agreement as "Stipulated Exhibit 2."
5. Plaintiff's last day worked with defendant-employer was February 14, 1994.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff, at the time of the hearing of this case, was 46 years old. She has an eleventh grade education and has worked for defendant-employer for approximately fifteen years.
2. Pursuant to the Form 21 entered into by the parties and approved by the Industrial Commission on July 21, 1992, plaintiff-employee sustained an injury by accident arising out of and in the course of her employment with defendant-employer on May 28, 1992, which resulted in cumulative trauma disorder, which mainly affected her left wrist.
3. Following the agreed upon injury by accident, plaintiff received treatment from Dr. Earl E. Correll on June 29, 1992, who reported that nerve conduction tests that had been performed did not reveal any evidence of any nerve damage or carpal tunnel syndrome. Dr. Correll referred plaintiff to Dr. John J. Wassel, an orthopedic surgeon practicing in Concord, North Carolina. On August 17, 1992, Dr. Wassel conducted an examination which was relatively unremarkable. Dr. Wassel ordered a number of tests, including x-rays and an MRI of the left wrist and hand. It was the impression of the radiologist that there may be minimal, localized tendonitis in the flexor carpi ulnaris tendon. Otherwise, there was no explanation found for the swelling and pain in the plaintiff's left hand. Dr. Wassel did not find a cause for plaintiff's symptoms and referred her back for a nerve conduction study. Following the nerve conduction study, Dr. Wassel concluded that it was not remarkable in suggesting a diagnosis of plaintiff's symptoms.
4. Following the work-up by Dr. Wassel, plaintiff was treated by Dr. Stephen J. Naso, Jr., a medical doctor specializing in hand surgery. On November 30, 1992, plaintiff had tendonitis or a cumulative trauma-type problem. Dr. Naso did not recommend surgery and permitted plaintiff to continue working with the restrictions that she was not to lift, push or pull over ten pounds or to do repetitive work.
5. Plaintiff was put on light duty by defendant-employer. Defendant-employer used light duty positions for employees who are injured on the job.
6. While working in the light duty position, plaintiff continued to experience pain and now began to experience pain in both hands. Plaintiff attempted to pull trucks containing her work, but was unable to because of the pain. As part of her assigned light work duties, she also was required to do some sweeping. Plaintiff used a dust mop that was approximately three to four feet across. Plaintiff told her foreman that this caused her pain. The position was modified so that she did not have to sweep between the machines, but only sweep the straight aisles.
7. On July 6, 1993, plaintiff was again seen by Dr. Naso, who reported that the June 29 arthrogram that he ordered was normal, and that the multiple complaints of the plaintiff concerning her left hand were rather diffuse. The only restriction that Dr. Naso provided at that time relating to work was that she should not do pushing and pulling and lifting in excess of ten pounds. He rated her as having a fifteen percent permanent partial disability to her left hand at that time.
8. On October 1, 1993, Dr. Naso reported no evidence of nerve compression in the left hand and no evidence of worsening in her condition. The plaintiff at this point was continuing to work in light-duty for defendant-employer.
9. In December of 1993 and January of 1994, defendant-employer sought to place the plaintiff in a permanent position. Defendant-employer had previously forwarded videotapes of several positions that were being considered for plaintiff to her treating physician, Dr. Naso. Dr. Naso reviewed the videotape and reported that the "auto cut" position was one that she could try. A sweeping position was also considered by the defendant-employer for permanent placement of plaintiff, which was not as strenuous or repetitive as the auto cut position.
10. In early 1994, Ken Geathers of defendant-employer offered the auto cut and cleaning positions to plaintiff. The cleaning position was one where plaintiff would not have to use a blower or a vacuum cleaner, but to just sweep using a push broom and take the lint to a trash can. The waste materials that plaintiff would be sweeping consisted basically of cotton lint. The cleaner position was on the third shift. Plaintiff refused both positions, advising Mr. Geathers that one reason she was refusing the cleaner position was because it was on the third shift. Plaintiff never discussed in any detail with Mr. Geathers about either job before refusing them.
11. Plaintiff was to report for permanent employment on February 14, 1994, but failed to do so. As a consequence, plaintiff was terminated by defendant-employer.
12. The permanent position offered to plaintiff as the auto cut operator was repetitive in nature and violated the work restrictions imposed by plaintiff's treating physician, Dr. Naso.
13. The sweeping position offered plaintiff by defendant-employer was within the work restrictions imposed by Dr. Naso. Although plaintiff testified at the hearing that when she engaged in sweeping in her light duty position she experienced pain in her hands, she nevertheless, should have at least attempted the cleaner position as modified by defendant-employer.
14. Subsequent to the plaintiff's termination with the defendant-employer, she sought to obtain unemployment compensation with the Employment Security Commission. Plaintiff was required to make two contacts per week with employers. Many of the calls she made to perspective employers were ones that were not hiring, and many were for positions for which she was not qualified. Plaintiff made such calls for employment during the twenty-six weeks for which she qualified for unemployment compensation.
15. Mr. William H. Haney, a vocationalist from Charlotte, North Carolina, was of the opinion that employee-plaintiff was potentially qualified to do some of the jobs for which she sought employment and concluded in his report that jobs which might be within plaintiff's capacity would include security guard work, receptionist-type work, hotel/motel counter clerk, telephone answering services, retail sales clerk, and sales attendants.
16. Employee-plaintiff has sustained a fifteen percent permanent partial disability to her left hand as a result of her compensable injury by accident.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff contracted an admitted occupational disease, arising out of and in the course of her employment. G.S. § 97-53(13).
2. If an injured employee refuses employment procured for her which is suitable to her capacity, she shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified. N.C. Gen. Stat. 97-32.
3. The auto cut operator position was not suitable and plaintiff was justified in refusing said position. The cleaner position offered to plaintiff, however, was within her work restrictions imposed by her treating physician and plaintiff was not justified in refusing the position without even attempting to perform those job duties. G.S. § 97-32.
4. Plaintiff has experienced a fifteen percent permanent partial disability to her left hand as a result of her compensable occupational disease. Plaintiff is entitled to compensation at the rate of $214.33 per week, for a period of 30 weeks. G.S. § 97-31.
5. Plaintiff is entitled to payment of all medical expenses incurred as a result of her compensable injury which may be reasonably required to effect a cure, give relief, and will tend to lessen plaintiff's disability. N.C. Gen. Stat. 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff on account of her admitted occupational injury, the sum of $214.33 per week for a period of 30 weeks beginning on February 14, 1994, for her permanent partial disability of her left hand. Such compensation shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee provided below.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her admitted occupational injury for treatment which may be reasonably required to effect a cure, give relief and will tend to lessen plaintiff's disability.
3. A reasonable attorney fee of twenty-five percent of the compensation stated in Paragraph 1 is hereby approved and awarded to plaintiff's counsel and is to be deducted from the compensation above-provided and paid directly to said attorney.
4. Each side shall bear its own costs.
This is the _____ day of December, 1996.
 S/ __________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ DIANNE C. SELLERS COMMISSIONER